IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD MILHAM, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORTIVA EDUCATION, INC., | : | NO. 06-04226 |
| | | |
| Defendant | | |

**MEMORANDUM**

Baylson, J.                                                                                                    October 25, 2007

**Introduction**

      This matter comes before the Court on Defendant, Cortiva Education, Inc.'s, ("Defendant," or "Cortiva") Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). Plaintiff, Donald Milham, ("Plaintiff" or "Mr. Milham") asserts claims against Defendant, his former employer, under the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621, the Pennsylvania Human Relations Act, ("PHRA") 43 P.S. § 951, and the New Jersey Conscientious Employee Protection Act, ("NJ-CEPA") N.J. ST 34: 19-1. For the reasons stated below, we grant Defendant's Motion for Summary Judgment on all claims.

**Procedural Background**

      Plaintiff's complaint was originally filed on August 8, 2006, in the Court of Common Pleas of Lehigh County Pennsylvania.[1] Defendant filed a Notice of Removal to this court,

---

[1] Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission

pursuant to 28 U.S.C. § 1441, on September 19, 2006.

Plaintiff's Complaint consisted of four counts: (1) a claim of age discrimination through disparate treatment under the ADEA; (2) a claim of age discrimination through disparate impact under the ADEA; (3) a claim of age discrimination under the PHRA which mirrors theories raised in the ADEA claims; and (4) a claim of discriminatory and retaliatory discharge under NJ-CEPA.

**Factual Background**

**I.      Undisputed Facts**

Plaintiff was born on August 15, 1952.  Plaintiff was hired as the Dean of Students at Somerset School of Massage Therapy ("SSMT") in July 2001, by the then-President and principal owner, Chris Froelich ("Mr. Froelich").  Plaintiff served as chairman of the Curriculum Committee, along with four other faculty members.   In 2003, a new curriculum, developed by the Committee, was implemented at SSMT.  It met with mixed reviews from the faculty.

In May 2004, SSMT was sold to Defendant.  Shortly thereafter, faculty approached Mr. Froelich and asked him to attend a faculty forum at which they presented him with a memorandum that documented some of their frustrations with SSMT ("Faculty Memo").  The Faculty Memo focused on the curriculum as modified by the Curriculum Committee and on Plaintiff's implementation of the curriculum.  The memorandum specifically discussed the faculty's frustration with Plaintiff's management style, his administration of the curriculum, and his attitude toward the faculty.  The faculty complained that the curriculum was tightly controlled

---

("PHRC") on January 18, 2005.  The EEOC and the PHRC issued Plaintiff a Notice of Right to Sue.

by Plaintiff and that the distribution of materials was often delayed or uneven. They claimed that the curriculum was ineffective, despite their best efforts, and that Plaintiff had disregarded their suggested reforms. The faculty complained that Plaintiff would not listen to their concerns, blaming the curriculum's failures entirely on them. The faculty asked to speak directly and confidentially with Plaintiff's supervisor, who at that time was Mr. Froelich. (Pl.'s Dep. Ex. 4).

Mr. Froelich met with the faculty on at least two occasions to hear about their concerns and responded in writing to those concerns on June 16, 2004, outlining how circumstances might be improved. Mr. Froelich shared the Faculty Memo with Plaintiff. During the late summer of 2004, Mr. Froelich transitioned to a strategic corporate position with Defendant and therefore no longer had day-to-day operational responsibility at SSMT.

In July 2004, Defendant hired Christopher Wargo ("Mr. Wargo") as Regional Vice President of Operations for Cortiva's New Jersey facilities. Mr. Wargo became Plaintiff's supervisor. Defendant also hired Jan Schwartz, ("Ms. Schwartz") formerly the chair of the Commission on Massage Therapy Accreditation, ("COMTA") to be its new director of education. Ms. Schwartz's duties included responsibility for the curriculum at SSMT.

In September 2004, the faculty presented the Faculty Memo to Mr. Wargo, who shared it with Ms. Schwartz. On October 28, 2004, Ms. Schwartz and Mr. Wargo met with the faculty to discuss the concerns raised in the Faculty Memo. Ms. Schwartz also attended a meeting of the Curriculum Committee. During the meeting, she observed tension between Plaintiff and the faculty regarding the curriculum and the way it was being delivered to the students. Ms. Schwartz also met with several members of the faculty who expressed to her, without exception, that they were unhappy with the school's administration. Ms. Schwartz stated in her affidavit

that the faculty felt Plaintiff had disregarded their opinions on the curriculum and whatever input they had offered. Ms. Schwartz stated that the faculty had told her that they did not feel the curriculum was in the best interests of the students. Ms. Schwartz discussed these matters with Plaintiff and told him that she was concerned that the faculty had lost faith in his leadership.

At the end of her investigation, Ms. Schwartz concluded that the faculty's concerns about the curriculum and Plaintiff's leadership were valid. She stated in her affidavit that she believed that SSMT needed someone with greater hands-on massage experience to correct the school's curriculum. Ms. Schwartz shared her findings with Mr. Wargo and then with senior members of Defendant's management. Ms. Schwartz, Mr. Wargo, the Vice President of Human Resources, the Chief Operating Officer, and Cortiva's President all conferred on the matter and decided to eliminate the Dean of Students position. In its place, they created a new position, Director of Academics. On November 15, 2004, Plaintiff met with Mr. Wargo, the Vice President of Human Resources, and another senior member of Cortiva's management. Plaintiff was informed at this meeting that his position had been terminated because Defendant was restructuring SSMT, due to faculty dissatisfaction.

From May 2004, when Defendant acquired SSMT, to November 2004, when Plaintiff was terminated, Defendant did not have any employees in the state of Pennsylvania.

## II.     Facts in Contention

In his deposition, Plaintiff discussed four reasons why he came to believe that he was being terminated because of his age: (1) Plaintiff claims that on at least two occasions around August 2004, Mr. Wargo entered his office upset about the behavior of faculty at SSMT. Plaintiff claims that during these conversations, Mr. Wargo called him "old school," "old

professor," "old-fashioned," and "unapproachable." (2) Plaintiff claims that at six different management meetings, Mr. Wargo referred to "old-fashioned" and "out-dated protocols" which had been implemented by Plaintiff and Mr. Froelich.² (3) Plaintiff claims that Mr. Wargo told Angela O'Keefe in the registrar's office and Bonnie Smith in IT that he wanted Plaintiff "gone" because Plaintiff was "old-fashioned," and that these conversations were repeated to Plaintiff.³ (4) Plaintiff claims that duties relating to the oversight of a construction project and a student disciplinary matter were taken from him and given to a younger employee.

Mr. Wargo denies commenting that Plaintiff was "old school" or "old fashioned," either in his office, or in management meetings. He was not asked at his deposition if he had ever discussed Plaintiff with Ms. O'Keefe or Ms. Smith.

Plaintiff also claims that he was fired because he blew the whistle on Defendant's violation of COMTA accredititation competencies and potential breaches of the school's federal funding eligibility under Title IV. Plaintiff stated in his deposition that he told Mr. Froelich, Mr. Wargo and Mr. Wargo's supervisor, Mr. Gonzales, about these potential problems but that his warnings were ignored. Plaintiff claims specifically that he spoke with Mr. Gonzales, Mr. Wargo's immediate supervisor, in late October about these issues, two to three weeks before he was terminated.

Plaintiff claimed he reported to his superiors that students were being allowed to attend classes for which they were not enrolled, and that students who were withdrawing from classes

---

² No evidence has been offered, beyond Plaintiff's testimony, to support this allegation.

³ The Court has seen no direct testimony from these witnesses. The only evidence Plaintiff offers to support these allegations is his own testimony.

5

were being billed incorrectly. Plaintiff also claimed that he was present when the registrar was advised to remove calculation sheets from student files before an upcoming audit and that Plaintiff had advised Dean Lisa Shad and the Financial Aid Director, Lisa Powell, that they needed to contact the school's Title IV consultant before doing this. Plaintiff asserted in his deposition that he believed these violations might have caused SSMT to lose its accredited status under COMTA or its federal funding under Title IV.

During discovery, a memo was produced dated October 22, 2004, ("10/22 Memo") which Plaintiff had written to Mr. Wargo stating, in relevant part:

> As mentioned during the regional meeting, clarification and coordination of policy related to student finance is a concern. Current financial policies related to NJ and COMTA regulation are in conflict and may present legal issues if not clarified. I will examine the current policies and make a recommendation for your review. We may lose revenue on the back end if we charge the students the full amount for returning to a new program in addition to tuition areas from another class. However, it would simplify policy procedures and possibly cut down on collectables. Using credit hours instead of scheduled hours as criteria for determining calculations would be less confusing for the student and simpler to implement. (Pl.'s Dep. Ex. 10).

This memo is the sole piece of written evidence supporting Plaintiff's claim that he reported his concerns to his supervisors.

For purposes of this motion, the Court will treat Plaintiff's fact contentions as true.

**Legal Standard**

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) is the appropriate analysis for summary judgment motions in cases alleging employment discrimination. Holness v. Penn State University, 1999 WL 270388, at *14 (E.D. Pa. May 5, 1999). In order to establish a prima facie case of

discrimination, the plaintiff must demonstrate the existence of four elements: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) similarly situated nonmembers of the protected class were treated more favorably than the plaintiff. See Jones v. School District of Philadelphia, 198 F.3d 403, 410-411 (3d Cir. 1999).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The Defendant satisfies its burden of production by introducing evidence, which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The defendant need not prove that the tendered reason actually motivated its behavior because the ultimate burden of proving intentional discrimination always rests with the plaintiff. Id.

If the defendant is able to come forward with a legitimate, non-discriminatory reason for its action, the plaintiff can defeat a motion for summary judgment by proffering evidence from which a factfinder could reasonably either (1) disbelieve the defendant's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendant's action. Id. at 764. To discredit the defendant's proffered reason, the plaintiff cannot simply show that the defendant's decision was wrong or mistaken because the factual dispute at issue is whether discriminatory animus motivated the defendant's actions. Id. at 765. What is at issue is the perception of the decision-maker, not the plaintiff's view of his own performance. Billet v. CIGNA Corp., 940 F.2d 812,

825 (3d Cir. 1991) (citations omitted); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509 (3d Cir. 1993), cert. denied, 510 U.S. 826, 114 S. Ct. 88, 126 L. Ed. 2d 56 (1993) (pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important).

A successful plaintiff under NJ-CEPA must show four elements: (1) he reasonably believed that the activity, policy or practice of defendant, his employer, was in violation of law, rule or regulation promulgated pursuant to law or was fraudulent or criminal, (2) he objected to or complained about activity, policy or practice, (3) retaliatory action was taken against him, i.e. adverse employment action occurred, and (4) there was a causal link between plaintiff's action and retaliatory or adverse action of the defendant employer. Dzwoner v. McDevitt 828 A.2d 893, 900 (N.J. 2003).

**Discussion**

**I.      Plaintiff's Claim of Disparate Treatment Under the ADEA Fails**

    A.    Plaintiff Established his Prima Facie Case

Plaintiff has established his prima facie case for age discrimination under the ADEA by demonstrating: (I) he was 40 years old or older at the time of his discharge and therefore he is a member of a protected class; see 29 U.S.C. § 631(a); (ii) he was terminated from Defendant's employ; (iii) he was qualified for the job from which he was terminated; (iv) his job responsibilities were delegated to younger employees after his termination. Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995) (setting forth the criteria by which a plaintiff may establish a prima facie case of age discrimination).

B.  Defendant Proffers a Legitimate Non-Discriminatory Reason for Terminating Plaintiff

In response to the plaintiff's prima facie case, a defendant must assert that it had a legitimate, non-discriminatory reason for terminating the plaintiff. Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). Defendant claims that Plaintiff's termination was a business decision to eliminate the Dean of Student's position because of faculty concerns about the content and the administration of the curriculum that Plaintiff had implemented. Defendant supported this claim with direct evidence: an affidavit from Ms. Schwartz, deposition testimony from Mr. Froelich and Mr. Wargo, and the Faculty Memo, in which the faculty themselves expressed concerns about Plaintiff's methods and leadership. Defendant also points to the fact that Plaintiff admitted there was tension between himself and the faculty. (Pl.'s Memo Dep. Tr. 29-32). This Court concludes that Defendant has established a legitimate, non-discriminatory justification for Plaintiff's termination. See Fuentes, 32 F.3d at 759 (setting forth criteria for establishing legitimate non-discriminatory justification).

C.  Plaintiff Failed to Show that Defendant's Legitimate, Non-Discriminatory Justification was Fabricated or that Defendant's Actions were More Likely than not Motivated by Discriminatory Animus

In order to withstand a motion for summary judgment, the plaintiff must present evidence to create a genuine issue of material fact regarding the credibility of the defendant's legitimate non-discriminatory reason for its adverse employment action against the plaintiff. Id. at 763. According to Fuentes, "to avoid summary judgment , the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered legitimate reasons was either a post hoc fabrication or otherwise did not

9

actually motivate the employment action." Id. at 764. Practically, the Fuentes test dictates that Mr. Milham can defeat summary judgment by pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of employer's action. Fuentes, 32 F.3d at 764. While the analysis of pretext is designed to focus on whether the defendant's proffered reason was the true reason for the employment decision, Plaintiff retains the ultimate burden to persuade the factfinder that the proffered reason was pretextual. DiFederico v. Rolm Co., 201 F.3d 200, 206 (3d Cir. 2000).

   i. Fuentes, Prong One

Under the first prong of the Fuentes analysis, Plaintiff must put forward "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Logan v. Countrywide Home Loans, 2007 WL 879010 at *6 (E.D. Pa., March 15, 2007) (Pollack, J. quoting Fuentes, 32 F.3d at 765). Plaintiff must present evidence that contradicts the core facts put forward by the employer as the legitimate reason for its decision. In the instant case, Plaintiff has failed to produce evidence which would lead a reasonable factfinder to disbelieve Defendant's proffered legitimate, non-discriminatory reason.

Defendant has produced ample evidence that members of the faculty at SSMT were dissatisfied with Plaintiff's performance as the Dean of Students. In the Faculty Memo, members of the faculty complained in no uncertain terms about both Plaintiff's management style and the new curriculum, which Plaintiff was responsible for creating and implementing. The faculty

appealed directly to Plaintiff's superiors in writing because they felt Plaintiff had been unresponsive to their concerns.  Mr. Froelich initially met with faculty to address these concerns.  Later, Ms. Schwartz, who Cortiva hired to oversee the SSMT curriculum, thoroughly investigated the faculty claims of dissatisfaction as well.

Though Mr. Wargo, who allegedly made the comments to Plaintiff that he was "old school," a member of the "old management," and dressed like an "old professor" was a member of the management team who made the final decision to terminate Plaintiff, he was certainly not the only person involved in the decision.  It was Ms. Schwartz who conducted a more in-depth investigation of the faculty's concern, meeting with additional members of the faculty individually, attending meetings of the curriculum committee, and sitting in on classes which had adopted the curriculum implemented by Plaintiff. It was Ms. Schwartz who concluded that the faculty's concerns about the curriculum were valid and that the faculty had lost confidence in Mr. Milham's leadership style.  She shared her views with Mr. Wargo and with other senior members of the Cortiva management team who concluded that "the faculty opposition to Mr. Milham's curriculum changes and overall discontent by the faculty had irretrievably fractured the academic and administrative structure at SSMT." (Aff. of Jan Schwartz, at 4).  The management team made a decision to eliminate Plaintiff's position and create a new position, Director of Academics, to oversee the curriculum.

Plaintiff offers no evidence to refute Defendant's claims that faculty and management were dissatisfied with his performance.  He admits that he was aware of the Faculty Memo but claims that Ms. Schwartz's conclusion that his job performance was inadequate was incorrect and that he was, in fact, performing well at his job.  But this determination is only somewhat

relevant to the issue of whether Defendant's reason for firing Plaintiff was pretextual: Defendant is allowed to make an ill-formed or incorrect decision to fire Plaintiff, as long as that decision was not based on Defendant's age. Keller v. Orix Credit Alliance Inc., 130 F.3d 1101, 1108-9 (3d Cir. 1997). It is not Plaintiff's job performance that is at issue, but rather the integrity of Cortiva's investigation into Plaintiff's job performance. Plaintiff's subjective belief that Defendant's conclusions about Plaintiff's job performance were wrong does not provide adequate evidence that Defendant's legitimate reason was merely a pretext for age discrimination. See Andy v. United States Parcel Services, Inc., 2003 WL 22697194, at *9 (E.D. Pa, October 24, 2003), aff'd, 111 Fed.Appx. 670 (3d Cir. Nov. 1, 2004). Plaintiff does not dispute the steps taken by Cortiva before it made the decision to terminate him, nor can he offer any evidence that Defendant took these steps because of his age. Therefore, this Court holds that Plaintiff cannot meets its burden under the first prong of Fuentes.

      ii. Fuentes, Prong 2

Under the second prong of the test set out in Fuentes, Plaintiff could establish that Defendant's proffered reason was pretextual by showing that an "invidious discriminatory reason was in fact, more likely than not a motivating or determining cause of his termination." Logan, 2007 WL 879010, at *6, (citing Fuentes, 32 F.3d at 764). There are several ways a plaintiff might go about meeting this prong: first, the plaintiff may show that the employer has previously discriminated against him, that the employer has previously discriminated against other members of the protected class or another protected class, or that the defendant has treated more favorably similarly situated people not within the protected class. See, e.g., Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). However, Mr. Milham has produced no evidence of other

discriminatory actions taken by Cortiva against himself or other older employees. In fact, Cortiva hired Ms. Schwartz, who is approximately three years older than Defendant, as their Director of Education in 2004, the same year that Plaintiff alleges Defendant fired him because of his age.

Second, Plaintiff might show pretext with overt evidence of discriminatory animus or indirect evidence of an ulterior actionable motive for the adverse employment action. Discriminatory comments by non-decision-makers, or statements temporally remote from the decision at issue, may be properly used to build a circumstantial case of discrimination. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).

A jury would be entitled to attribute the discriminatory comments and animus of Mr. Wargo to the senior managers who made the decision, along with Mr. Wargo, to terminate Plaintiff. However, the comments of one manager, while relevant, are not sufficient, without more evidence, to support an inference that age based discrimination was the motivating factor in Mr. Milham's termination. Logan, 2007 WL 879010, at *8 (citing Waldron v. SL Indus., Inc., 56 F.3d 491, 502 (3d Cir. 1995) (noting that comment by decision-maker five months before termination was not irrelevant, but that standing on its own it would be likely to be insufficient to demonstrate that age discrimination was more likely than not a determinative factor in the decision to terminate.)) The comments alleged by Plaintiff, that Wargo called him "old school," "old professor," and old fogey," were too temporally attenuated from the decision to terminate Plaintiff to be adequate, in the absence of other evidence, to support Plaintiff's claim to defeat summary judgment. Their probative value is further diminished by the fact that none of the comments were directly related to the employment decision. Even though top management at

Cortiva consulted with Mr. Wargo, the alleged comment-maker, when terminating Mr. Wargo, they indisputably based their decision in large part on the independent report of Ms. Schwartz, which Plaintiff has not discredited. Therefore, these comments are too remote from the termination decision to support a reasonable indirect inference of age discrimination as a motivating factor for Plaintiff's termination. Logan, 2007 WL 879010 at *8.

Plaintiff presents no evidence to create a genuine issue of material fact regarding the credibility of Defendant's legitimate non-discriminatory reason for terminating him. The evidence, even when viewed in the light most favorable to Plaintiff, cannot support a reasonable inference that Mr. Milham was terminated because of his age. The Court therefore finds that on Plaintiff's claim of disparate treatment, Plaintiff has not raised a genuine issue of material fact on the issue of pretext, and will accordingly grant summary judgment.

**II.     Plaintiff Withdrew Claim Under PHRA Claim Because Defendant was not an Employer in Pennsylvania at the Time Relevant to the Litigation**

In Count III of his Complaint, Plaintiff states that Defendant violated the PHRA when it terminated him because of his age. This claim fails as a matter of law because the Defendant was not an "employer" in the state of Pennsylvania during the relevant period. Plaintiff admitted that Defendant was not an employer within the definition given by the statute at any time relevant to this litigation and therefore has withdrawn this claim. (Pl.'s Memo in Opposition to Def's Motion for Summary Judgment, at 28).

**III.    Plaintiff Withdrew Claim of Disparate Impact Under the ADEA**

At oral argument on October 16, 2007, Plaintiff withdrew his claim of disparate impact under the ADEA.

14

**IV.    Plaintiff's Claim of Retaliation under NJ-CEPA Fails**

To establish a prima facie case under NJ-CEPA, Plaintiff must show: (a) Plaintiff reasonably believed that his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (b) Plaintiff performed a whistle-blowing activity described in NJ-CEPA; (c) an adverse employment action was taken against Plaintiff; and (d) a causal connection exists between the whistle-blowing activity and the adverse employment action. Blackburn v. United Parcel Service, 3 F. Supp. 2d 504, 512-513 (D.N. J. 1998) aff'd, 179 F.3d 81 (3d Cir. 1999).

NJ-CEPA states in relevant part:

> An employer may not take retaliatory action against an employee because that employee does any of the following: (a) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice...that the employee reasonably believes: (1) is in violation of a law, or a rule, or a regulation promulgated pursuant to law...or (2) is fraudulent or criminal...
> N.J.S.A. 34:19-3.

In step (a) of the NJ-CEPA analysis, the court must determine whether there exists a clear expression of law either in a statute, rule or in a regulation promulgated pursuant to a statute that would be violated if the facts, as alleged, were true. Blackburn, 3 F. Supp. 2d at 514. Plaintiff does not qualify for whistle-blower status merely because he brings "potentially problematic" issues to Defendant's attention that "might" raise legal concerns. Id. Plaintiff does not need to know with legal certitude that the law was broken, but his belief must be such that a "reasonable lay person would conclude that illegal activity was going on." Young v. Schering Corp., 645 A.2d 1238, 1244 (N.J. Super. Ct. 1994) aff'd, 660 A.2d 1153 (N.J. 1999).

Mr. Milham claims that he tried to raise three issues with his superiors at Cortiva: (1) Cortiva might be in violation of COMTA regulations that could potentially jeopardize their COMTA accreditation; (2) Mr. Wargo instructed a financial aid officer to remove certain calculation sheets from student files in preparation for an audit to be performed in late 2004; and (3) the school's method of billing students might be in violation of Title IV.  (Pl.'s Dep. Tr. 99-101, 104-108).

Claims one and two fail as a matter of law for several reasons.  First, Plaintiff has not shown that violation of COMTA accreditation policies or removing documents from student folders before an internal audit are potential violations of any law or constitute fraudulent action.  Second, NJ-CEPA states that in order to qualify for protection, an employee must provide the employer with written notice of his concerns. N.J.S.A. 34:19-4.  Plaintiff has produced no evidence that he ever wrote to his superiors regarding the COMTA accreditation or the removal of paperwork from student files.

Plaintiff's last claim, that he is entitled to NJ-CEPA protection because he expressed concerns that Defendant might be in violation of Title IV in its billing practices, is substantiated with written proof.  Plaintiff has produced the 10/22 memo, written to Mr. Wargo, which voices his concerns that SSMT's billing practices "may present legal issues if not clarified."  However, despite this written record, this claim fails because Plaintiff produced inadequate evidence that he reasonably believed Defendant was violating the law.

Even when viewed as liberally as possible, the 10/22 memo and the claims relating to it are inadequate to survive summary judgment.  Bringing potentially problematic issues to the attention of his supervisors was Plaintiff's obligation in his managerial role as Dean of Students.

An employee who merely conveys his concern that a law might be violated if changes are not made does not satisfy the first element of an NJ-CEPA claim. To state a claim, Plaintiff must reasonably believe that his employer's conduct is in violation of a law, or regulation promulgated pursuant to the law. See Blackburn, 3 F. Supp.2d at 516.

All of Plaintiff's whistle-blowing claims also fail the fourth element of the test set out in Blackburn because Plaintiff can show no causal link, beyond a temporal connection, between his alleged whistle-blowing activities and his firing. Plaintiff asserts that he was fired in retaliation for reporting Defendant's potential breaches of COMTA accreditation procedures and Title IV funding provisions. He claims that he reported these breaches to Mr. Wargo, his supervisor, and Mr. Wargo's supervisor, Mr. Gonzales, in late October, 2004 and that he was terminated in the middle of November, 2004. However, Plaintiff can provide no evidence that his decision to report his concerns to management was in any way connected to his termination. This absence of any showing of a causal connection between his actions and his termination further dooms his case.

A CEPA Plaintiff can prove causation by presenting direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation. Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1143 (N.J. Super. 1995). In the absence of direct evidence, Plaintiff bears the burden of providing circumstantial evidence that would justify an inference of retaliation. See Fleming v. Correctional Healthcare Solutions, Inc., 751 A.2d 1035, 1041 (N.J. 2000). In circumstantial evidence cases, courts apply the burden shifting framework of McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Defendant's legitimate non-retaliatory reason for firing Plaintiff is the same as its non-

discriminatory reason discussed in Section I: Plaintiff was not performing his job adequately. Put simply, Plaintiff can provide absolutely no evidence, either direct or circumstantial, to rebut Defendant's claim that he was fired because of his job performance, rather than in retaliation for being a whistle-blower. A temporal link is usually inadequate, absent other evidence, to support a claim of retaliation. See Campbell v. Abercrombie & Fitch, 2005 WL 1387645 at *7 (D.N.J. June 9, 2005). Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's NJ-CEPA claim.

**Conclusion**

The Court grants Defendant's Motion for Summary Judgment on all of Plaintiff's claims.

O:\Dana\Milham v. Cortiva\memorandum opinion 10-18.wpd